May it please the Court, my name is Richard Martinez and it's my pleasure to be here today, Your Honor, representing Ms. Hambright, who is the appellant. The issue before the Court arises out of a granting of a motion for summary judgment on behalf of the Postal Service. Ms. Hambright, at the time that she brought this claim of discrimination and retaliation, was a 40-year employee of the Postal Service and remains employed with the Postal Service. The issues before you are twofold. The first has to do with the district court's failure to acknowledge that what occurred on July the 22nd when Ms. Hambright was requested to transfer, to take on a, whether it was a permanent or on a temporary basis, the evidence would appear to indicate more of a temporary basis, an assignment to another postal station, that she declined. It is undisputed that she declined because of her fear of driving and what she posed as an accommodation that had been at the station that she's at, that she'd been at, at that point in time for three years. Those individuals who had made the request, Mr. Arroyo, who was more in the district or regional manager capacity, and Mr. Emory, who was her station manager, immediately questioned her, as certainly Mr. Arroyo did in terms of medical documentation. The fear of driving issue came up from a non-work-related car accident. Did she have a formal accommodation in place at the time of the request that she transferred on a temporary basis? I think that quite honestly is a question of fact. At a minimum, it is an informal accommodation. And it is undisputed, Your Honor, that with respect to what she requested or why she declined, even the managers acknowledge that she declines based on the driving issue and her issue that she had an accommodation. She wants to continue the accommodation. What was the informal accommodation? The informal accommodation was that to the extent that she needed to drive, it was on a limited basis. In fact, in the assignment that she had, Your Honor, she was the PM supervisor. And as the PM customer manager supervisor, it was primarily more an in-office position. For example, she had the financial responsibilities, did the finances for the station on a daily basis. She did in the record – I'm sorry. I guess my question is, and that's responsive to my question, but was there any record in the post office of any kind of restriction that she was operating under that required an accommodation, formal or otherwise, prior to at the time that she was asked to transfer? I think the record at the time, Your Honor, is that was – I would characterize it more in the informal and at the verbal stage. There was clear documentation about the fact that she'd been in the car accident, that she had been out for some period of time for the car accident, and that there was a period of time when she could not work. In addressing that point, Your Honor, though, I think when we look to the Crawford decision and the other decisions of the other circuits, the history of accommodation I don't think is the relevant inquiry here. Because I think the question becomes, under an analysis for purposes of retaliation, is did she engage in protected conduct when she declined? When she declines and she seeks and she declines based on accommodation or the need for accommodation, has she engaged in protected conduct? I think that the Crawford decision of the Supreme Court on January of 2009 leads us to the answer that the district court failed to recognize. The answer to that is yes. That's your initial prong in an analysis under retaliation. The second question is the adverse action. I think there's no dispute that there's a whole series of adverse actions that occur as a result of that. And then the third question becomes causal nexus. And in this circuit and certainly very common in most cases, one of the principal ways in which one establishes causal nexus, Your Honor, is the question of temporal proximity. The district court not recognizing the January 22, 2006 conversation as protected conduct then does not look to the timeframe between the 22nd and August 18th when the adverse actions start. And the adverse actions start immediately in the form of a letter, which is under tab 16 in the record we submitted to you, of where she has provided a letter saying you will provide immediate documentation. If you don't, you know, essentially you have three options. One of those you can go to the DRAC, which is a formal committee process to get reasonable accommodation. You can take medical retirement or you can seek transfer to a position you can do. Under the theory that she was no longer able to perform the essential functions of her position, that, too, becomes a question of fact. So the error, the mistake that occurs here all rests on a retaliation claim is the failure to recognize that that January 22 conversation is protected conduct. If I could take a minute, and I do want to reserve at least three minutes or two minutes, Your Honor. With respect to the race claim, and let me say as an overlay to both issues, we're not in this appeal disputing the 45-day rule, that as a Federal employee in the Postal Service, she has 45 days in which to timely raise her claims of discrimination. We're not disputing on what dates those two charges of discrimination went in. We're not disputing Judge Bolton's rulings as to the calculation of the days. So, you know, in Judge Bolton's order, she's very clear about what claims she thought arose under the two charges, and she calculates, as I think is correct, from the date of the informal, when you first contact the EEO officer. But what flows from that, though, is I think a distinction that must be taken account of is what is an actual, what can Ms. Hambright recover for as opposed to what is relevant evidence of discrimination, especially on the basis of race? Counsel, something that has puzzled me. I didn't think that when one is asked to perform a certain duty and declines for a good reason, that that is protected conduct that gives rise to this kind of a claim. What cases do you have that tell us that that's protected conduct? Yes, Your Honor. Twofold. First of all, I believe that the Crawford decision of the Supreme Court is applicable, and although not in all fours, that certainly, in Crawford, Your Honor, that decision is where an employee is questioned. She does not raise a claim of sexual discrimination or sexual harassment. She's questioned it and reports it. In our brief, Your Honor, we provide decisions from seven circuits that address that issue in the context, if one requests reasonable accommodation, that that is considered protected conduct. And that is, in our opening brief, found that they do. But this is kind of different. They're asking her to do something which is kind of out of line with her usual duties, and she says, no, I can't do it because my back hurts and I'm afraid of driving that much. Well, I think she says more than that, Your Honor. I think that it's undisputed, and the key words here is that she says, I've had an accommodation that arises out of my fear of driving, and that I'm declining on the basis of that accommodation. And that, I think, is in line with the other circuits, whether it's the Mayer decision, the Kasman decision, Heisler, Wright v. Comp USA, that whole line of cases that we cite, Your Honor. I think that she falls within the ambit of those cases, and she's analogous. I think that she has said that which needs to be said to put her within that scope of protection, Your Honor. I also believe that what she says at least makes it a question of fact for a jury to decide as to whether or not she has said enough. I also would point to, Your Honor, that in the responses both from Mr. Arroyo and from Mr. Emery, and we can see from their immediate letter, Your Honor, the letter at tab 16 provides, which was Exhibit 21, it says, We have recently been notified of your long-term restrictions. The restrictions are driving 20 minutes per day, which is a distortion of what the restrictions are. And it says, You do not have a permanent light-duty assignment within your restrictions. What I think that shows is that the hearers of what she said on July 22nd clearly understood her as saying, I have limitations, and that due to my limitations, my physical limitations, I cannot, I'm declining what was intended to be not a mandatory or unilateral or, excuse me, an involuntary transfer, but was, I think, proposed to be as a voluntary transfer, which she declines. So you take a voluntary transfer, which she declines. And if you recall within our circuit, certainly, you need not prove your underlying claim of discrimination. She need not actually be a person with a disability. She need not be a person under the Rehabilitation Act who's actually entitled lawfully to an accommodation, that an accommodation be provided for her. But the mere fact that she did raise it, and she raises it in good faith, then does put her within the protections of protected conduct. And we believe that she and others who are in the same situation, Your Honor, should be recognized and need to be protected, because when we don't protect individuals from discrimination, from being able to raise the issue of discrimination or the need for retaliation, excuse me, the need for accommodation, and we leave them exposed to an employer's punishment, then what you do is you eviscerate the statute, because then you leave the individuals in fear of ever requesting that accommodation or voicing that concern about discrimination. And I believe that the courts have consistently thought that it is important, whether or not discrimination actually occurred, that employees be in a position where they can at least raise it, and raise it from a place where they're safe and not subject to being punished by their employers. Thank you, counsel. Thank you. May it please the Court. My name is Christine Keller. I represent the appellee John Potter. I'd like to start by addressing two of the things that counsel discussed during his argument, both regarding the retaliation claim and this accommodation. Counsel suggests that Ms. Hambright had an existing accommodation at the Ahwatukee Station, and he believes that there's a question of fact on that issue. I submit that is wholly inaccurate. In fact, the testimony is that Ms. Hambright had an accident in 1999, and she was cleared of all restrictions in 2001. That's not only supported by the documentation in the file, but also by Ms. Hambright's own testimony at her deposition. What she further testified occurred was that she recognized in herself that despite being cleared, she still had a fear of driving. She found that Ahwatukee was hiring. She requested a transfer because she believed that more fit with the restrictions she believed she had. Restrictions she doesn't believe she ever told anyone. There was no evidence that there was a formal accommodation, and similarly, no evidence there was even an informal accommodation here. Ms. Hambright testified, I think correctly, that she, quote, unquote, accommodated herself. There was no accommodation by the Postal Service that would give rise to this concern that counsel seems to suggest that the Postal Service, a decision for the appellant in this case, would show that the Postal Service is, or stop the Postal Service from removing protected individuals and placing them somewhere else, jeopardizing their accommodations. There was no accommodation. Secondly, this argument that Ms. Hambright, the appellant, declined to go to Sunnyslope because she needed an accommodation similarly finds no support in the record. Importantly, there was no conversation in July where she said, I have an accommodation or I need an accommodation. The deposition testimony is very clear. What she said was, I don't like driving long distances and I fear driving long distances, not that I need an accommodation. Importantly, in the district court litigation, as well as in her EEOs, Ms. Hambright found the Postal Service's attempts to accommodate her discriminatory and retaliatory conduct. To now stand here and suggest that Ms. Hambright was actually requesting an accommodation flies in the face of the entire record. Ms. Hambright could not have been more clear. She did not want an accommodation. She did not need an accommodation. And she refused every opportunity the Postal Service gave her to accommodate  Neither of those are in evidence. There was no request for accommodation. There was no existing accommodation. Additionally, my counsel says that he is not going to challenge and did not, in fact, challenge in his briefs this 45-day contact ruling that Judge Bolton made correctly. He did suggest to you that there were multiple adverse actions that Ms. Hambright was subjected to in her retaliation claim. Judge Bolton found one that was timely, unpaid leave. There are not a multitude of adverse actions here. There is one that is raised here. But in any event, it doesn't matter because there was no protected conduct here. As properly noted by the Court already, simply stating that you have a medical condition or a mental fear of driving does not rise to the level of protected conduct. Protected conduct, as counsel noted in Crawford, goes one step further. It's where you belong to a protected class, you have something happen, and you oppose what you believe is an unlawful practice. Simply stating that you have a restriction is not in opposition to an unlawful practice. It's simply putting the fact out there in record. That is not protected conduct. No case law is cited to support that that's protected conduct, nor was I able to find any case law to suggest that's protected conduct. Moving up, just one more point on the issue before I move on to race. What we appear to really have here is a discrimination, a disability discrimination or Rehab Act case that's been sort of reinvented as a retaliation claim. To move with what counsel suggests this Court should do means that it would put essentially employers in an unworkable situation. All of the actions that were taken by the Postal Service in this case were an attempt to clarify Ms. Hambright's physical restrictions under the Rehab Act. Counsel now suggests that all of those things, requesting documentations, assigning her to light duty, opening the drack, become evidence of retaliation. Those are things that this Court and the case law and the Rehab Act expect and require employers to do when their employees come in showing some signs of physical or mental restrictions in their work. Those are things we want them to do. We want them to find out what those restrictions are and see if they can make a workable situation for the employee in their continued employment. To now suggest that those would somehow expose them to a lawsuit under retaliation would flip the entire Rehab Act on its head and really make an unworkable position for employers. Moving on just quickly to the race argument. Again, counsel says that he's not challenging Judge Bolton's ruling on the 45-day time frame. However, the basis for Ms. Hambright's race claim is her transfer and ultimate replacement at her prior position by two non-African Americans. Judge Bolton found that this removal and replacement was not within the 45-day period. And as such, there is no prima facie showing for the race discrimination claim. And even if there were, I submit to you that the individuals cited by Ms. Hambright, Ms. Ayala, and Ms. Collins are not African American. That's clear. However, they also are not similarly situated to plaintiff in all material respects and that neither of them presented with medical restrictions that could stop them from performing essential functions of their job. I just submit to you that the Postal Service's actions were the only proper response to the situation given that the appellant's restrictions suggested that she was unable to perform essential functions of her job, where she repeatedly refused to clarify her restrictions or participate in the reasonable accommodations process. Instead, she refused to go to the DRAC even after it was opened for her by the Postal Service. She refused to provide updated medical information for nearly five weeks, inexplicably, despite the fact that she had it. And she refused all help from the Postal Service to put her back to work. Left without that information, the Postal Service was faced with a non-responsive employee who it believed could not perform the essential duties of her job, and they were compelled to take the legitimate actions they did to protect both themselves and Ms. Hamright. Mr. Fletcher, do you have any questions? No. Thank you for your argument. Thank you. There's one thing that we do know about retaliation and what the law prohibits. It prohibits adverse actions. And in this case, there was a series of adverse actions that arise. What's being ignored here by counsel and by the Postal Service is that they start out with what they call a voluntary transfer, a request, would you consider going and helping us at another station, to which she declines. That turns into an involuntary transfer. What happens is that not only is Ms. Hamright removed from her station, where she'd been at for three years without incident, with nothing but positive feedback and positive performance, she loses her job. Let's say that we go all the way through it. What's your best evidence of pretext that's in the record? The best evidence of pretext, Your Honor, I think arises threefold. I think, one, it's temporal proximity, in which the immediate transformation, and that's out of Pasatino. Certainly we have that whole line of cases in Strother. We also have, Your Honor, the issues that are raised, that she can't perform the essential functions of her position. They say, for example, that she can't do review routes. In fact, the frequency with which she has to go out and review routes is very infrequent, both for her and her own experience at that station and in the 204Bs who replace her. Remember, she's replaced by not only two non-African-Americans. She's replaced by two temporary supervisors, subsequently, who have none of her credentials. She's a permanently promoted supervisor. Neither of these individuals are promoted supervisors. They don't have her qualifications. They have not met the Postal Service requirements to be promoted on a permanent basis. In addition, when those two individuals were asked what their experience was with respect to having to do route inspections, they said that it was very infrequent and it was for very short periods of time. The other thing I would point to, Your Honor, is just to look at the distortion that occurs. At tab 15, we submit the letter that Ms. Hambright turns in, and they say that she delayed. This meeting occurs on July 22nd. On July 25th, she turns in a letter. In the letter, it says, due to medical concerns from a car accident in 1999, Datheria has difficulty in fear of driving for long distances. Therefore, it is my opinion she not drive more than 20 minutes span of time. A 20-minute span of time. This is immediately distorted as reflected at tab 16 on August 18th by Mr. Emery and by Mr. Arroyo to say she can only drive 20 minutes a day. I would suggest to the Court that that's evidence of pretext. That's evidence of retaliation. And that's a lot. Because how do you go from a 20-minute span of day, because I think that that's very plain and common language and easily understood, to a 20-minute a day driving restriction, which they then interpret to say you can no longer perform the essential functions of your position, although she's not in a driving position, although the position description for her supervisory position doesn't make driving a requirement of the position, and it doesn't identify as an essential function that she has to be able to do route inspections or to be part of a team that is going out and doing that when they do special inspections or they do in a large group. What happens here, Judge, and let me close with this, whether or not there was a history of accommodation, let's assume, let's even take counsel's position. She had accommodated herself. Let's take it in that context. The question that Crawford answers for us in the other cases is that whatever happened before doesn't matter. What's relevant is what happened on July the 27th of 2006. Does her declining and the reasons that she offered, saying that I'm a person who has a fear of driving and this is, you know, the accommodation that I need, is that protected conduct? And that question, we believe, has to be answered, and the case law answers that in the affirmative. Thank you. Thank you both for your arguments. The case will be submitted for decision, and we will be in recess for the morning. All rise. Court is adjourned.
judges: Rosenthal, Fletcher B. , Thomas